Secretary of State in his official capacity. Mr. Lynch for the appellant, Mr. Hehir for the appellee. Morning, Your Honors. Morning, everyone. Pete Lynch, counsel for the appellant, Julie Beberman, seated at the council table. May it please the court. Congress has expressed its intent to join Appendix 388 in this matter. It has been argued that suspension of separation could be viewed as prejudging the case. Nothing could be further from the truth. All our courts at times find it necessary to preserve the status quo, usually with an injunction during the pendency of legal proceeding. Such action is by no means a judgment on the merits, but is only a necessary tool designed to preserve the rights of all parties until the resolution of the legal and factual questions presented. Now, interlocutory decisions of district courts falling within the ambit of the collateral order doctrine are subject to immediate judicial review. How much more so, then, should interim decisions of the Foreign Service Grievance Board and administrative tribunal be subject to that same immediate judicial review? The collateral order doctrine should apply narrowly to appeals of interim relief orders arising under the Foreign Service Act, for the same reasons as this court applied it to an appeal of a reinstatement order under the Federal Mine Safety and Health Act in CalPortland. As in CalPortland, the three prerequisites to qualify for immediate judicial review under the collateral order doctrine are met. First, separability from the merits. Second, conclusiveness. And third, effective unreviewability. Separability, in the same way that an inch does not equal a mile, despite slight overlap between an interim decision and a decision on the merits, the two nonetheless remain separable. The Foreign Service Act has not set a standard, but in practice, the Foreign Service Grievance Board grants interim relief to tenured Foreign Service officers if it finds their claims to be non-frivolous, like a quarter inch. And it provides interim relief to non-tenured officers, such as Ms. Biberman, if their claims are found to have more than a remote possibility of prevailing on the merits, like an inch. Isn't it a reasonable likelihood of prevailing? Isn't that the standard under the board's precedence? It has to be a reasonable likelihood of prevailing? No, I think, Your Honor, I think that is separate. That falls under the provisions for a stay, a reasonable likelihood of prevailing on the merits. In terms of the Foreign Service Act before the Foreign Service Grievance Board, as long as a non-tenured employee has more than a remote possibility of prevailing on the merits. Can you point to me where that language occurs in the board's cases? I believe it's referenced in Title 22, Section 4940. That's the reference. So in any event, both for tenured officers and for. I want to back you up, if I may. On the one hand, you want to analogize the situation here to the grant or denial of a preliminary injunction. Correct? Right. But you don't want to use the standards for whether a preliminary injunction should be issued. Well, I think that comes standards are probability of success on the merits, just as Judge Rouse said. That's not the standard in other interlocutory orders, but it certainly is the standard for preliminary injunction. So if you're going to persist in the analogy, it seems to me that it's incumbent upon you to satisfy the conditions. And I don't see any any argument to that effect in your brief or client's brief. Yeah, I think what I what we're missing one another on is the point that the district court denied the appeal, not because of a PRO merits decision or likelihood of prevailing, but because it found that it was not entitled to treatment of the collateral order. And so that is the standard, the first step. And I would agree with you, Your Honor. Ultimately, I will demonstrate that Ms. Biberman does meet the standards or stay. But right now, at least at least preliminarily, we have to show that the district court actually had jurisdiction when they declined it. They thought they did not because they had they didn't feel this case met the standards of the collateral order doctrine and that it was not separable. It was not conclusive on the interim decision. It was not effectively unreviewable. But once we get to the question that the court is asking, I think we're in complete agreement that, Your Honor, we have a. You haven't sought back pay or your client has sought back pay, is that correct? Well, one back pay is currently on the list, but it's the least of her harms because she's been well employed subsequent to her foreign service. The real problem is another standard for for a preliminary injunction is irreparable harm. Yes, I can see it. If the if the argument here was that she was entitled to be paid and wasn't. And but even then, are you familiar with Section 704 of the APA? Yes. Which says that on appeal from or judicial review of a agency decision that all the preliminary rulings come up to. You can. Yes. And we invite you. We invite that, Your Honor. We're we're not asking the court to make a broad ruling here. It's a very specific ruling. And the purpose of the congressional intent vote was to demonstrate to the court Congress's recognition of the singular type of career path that a foreign service officer is on. So that if they're denied interim relief, effectively, they're pulled right out of their career path and it is damaging and it is not something that a person can recover from. And and so in addition to the lack of pay, the impact of the separation, it's been almost three years now. Ms. Biberman was separated October 31st of 2019. Every day that is lost. Ms. Biberman is lost to the public. Actually, the public interest is. Mr. Lynch, say we assume that the collateral order doctrine applies here. I'm still not sure how you can demonstrate separability because, I mean, there is a board decision case number 2013. Oh, four nine, which says that for untenured officers, they get interim relief only if they have a reasonable likelihood of attaining relief. Right. So it's the the criteria that the board has set out for obtaining interim relief for an untenured officer like Miss Biberman is is very much tied up with the merits. The actual standard requires a reasonable likelihood of success on the merits under the board's adjudication. So, I mean, if that's the case, how can you show separability? Well, I think because you've not made any challenge, I think, to whether the board's. You know, prior decisions on this are invalid or contrary to law, you've not made any challenge to the board standards. What we're looking at, Your Honor, is a whether I'm incorrect and the court is correct with regard to the remote possibility versus the likelihood of prevailing standard. Either one of those is not the final decision. It may have some overlap with the final decision, like an inch has with a mile, but it is not one and the same. They're separable. In Cal Portland, this court said that temporary reinstatement order has no bearing on the ultimate resolution of a complaint. As a complainant's discrimination case proceeds, regardless of the commission's holding on the temporary reinstatement application and the temporary reinstatement order does not affect the merits decision. Now, that was under the Mine Safety Act. Well, the Mine Safety Act, I mean, the statutory standard there is very different from the standard in the Foreign Service Act. Well, in both cases, Your Honor, I would suggest to the court that the Congress has looked at the impact of potential separation, both of minors and of Foreign Service officers. And these are not the run of the mill types of careers. It causes great harm. The fact that someone is separated from the service and that is the kind of irreparable harm caused in the interim relief that we don't see is has any bearing on the merits. Assume for the moment, I'm jumping ahead of the jurisdictional question, but assume for the moment that we have jurisdiction, what is the standard? What is your understanding of the standard that the board applies in determining whether to extend the interim relief beyond the one year period? Well, my understanding, Your Honor, is that they are required to extend it to the one year point. And if my question is beyond the one year beyond the one year point, if there are grievances pending, which in Ms. There is still what's the standard that the board applies in determining whether to extend the interim stay beyond one year? That's my question. Do you know? Right. This is this falls directly under the collateral order doctrine. It's no, no, no, no, no. What is the standard that the board applies? Do you know if you don't know? So my understanding, Your Honor, is that the board routinely grants extensions or interim relief beyond one year. Well, here's what the stat here's what the statute says, says if the board determines that beyond the one year period, that that delay is due to the complexity of the case, the unavailability of witnesses or circumstances beyond the control of the agency, the board of the grieving. Then then the board can extend the stay. And so I guess my question is, there's no I don't see any anything that indicates that any of those factors are even present here. So the question then becomes where the board even had authority to extend the stay beyond the one year period. Well, I think, Your Honor, the record shows that if there was any delay, it was not the part on the part of Miss Biberman. It was actually some of these interim decisions were referring to the attempting to compel production in support of the interim relief decision. And so there are multiple decisions that merge. See, my time is up. Give you some time on rebuttal. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. First, they do not resolve important questions separate for the merits of Miss Biberman's grievances. Rather, it constitutes the board's preliminary finding that she is unlikely to see succeed in her grievance appeals. Second, they're also not effectively unreviewable on appeal on appeal from a final board decision since they do not impact rights that would be irretrievably lost in the absence of an immediate appeal. So, Mr. Hare, before you get to before we get to the three part test that is applied and. Twelve ninety one on text. I have a question about forty one forty. Do you have that, Andy? Yes, Your Honor. So. Supreme Court and this court have applied the collateral order doctrine. Under statutes authorizing judicial review of. Final decisions or final actions. But forty one forty seems more limited. Maybe more limited in a way that matters. Forty one forty authorizes and I'm going to quote from it judicial review of final action. The secretary or the board on any grievance. So, in other words, the only thing a court can review is a final action on a grievance. I'm not sure an interim relief order counts as final action on a grievance. Do you have thoughts on that? I do, Your Honor. And I think that's I mean, we sort of begin and end with the statute in that respect, because on the grievance seems to suggest that there aren't a number of final actions baked into any particular grievance. That there is inevitably a final action on that particular grievance appeal. You know, and the statute doesn't say the grievance. It says on any grievance. Yes, Your Honor, and that I believe refers to the specific grievance appeal that's presented to the board here. It's a little bit complicated because there are three different grievance appeals at issue. Only one of which is still pending with the grievance board. But I believe final action on any grievance would then be, I think, a reasonable interpretation of that would be the board's culmination of its review of that particular grievance. At least that's still pending after all these years. Yes, Your Honor, I think the simple answer to that question is that each of these grievances has involved a number of motions put forth by the grievant. And in this case, Ms. Biberman, the board has been called upon to issue numerous decisions to resolve discovery disputes, to resolve motions for interim relief, temporary interim relief, which is a slight bit different. It's more of an administrative stay before the board reaches. Is it the Caracas or the Guinea? Which one of these numbers? Actually, your brief jumbled up the numbers. I don't know if you realize. Pages nine to nine and ten. No, Your Honor, I apologize. The board proceeding that's still pending is the one that ends in 001. And I believe that does deal with the, if I'm not mistaken, the Caracas. That's the one that's been decided or still pending? No, that is the one that is still pending, Your Honor. The other two have reached, the other two grievance appeals have reached final decisions and are the subject of other district court litigation brought by Ms. Biberman after this case was brought and notably involve many of the same orders at issue in this case. I think 001 was decided and it's 2015-35 that's pending. I think you've got that back. I apologize, Your Honor. So the proceedings that have concluded are board number 2016-036. That's the tenure. And 2016-001. So it's the 2015 board proceeding that is still pending. Right. Going back to Judge Walker's statutory question. So I guess I'm wondering, given the definition of a grievance in, I guess, 22 U.S.C. 41-31, why couldn't a grievance about being denied interim relief? I mean, isn't that also a separate grievance, the meaning of the statute? So the statute says a grievance means any act, omission or condition subject to the control of the secretary, which is alleged to deprive a member of the service of a right or benefit authorized by law or regulation or which is otherwise a source of concern or dissatisfaction to the member. Why doesn't that include the request for interim relief? Your Honor, the request for interim relief is not a separate grievance appeal or anything quite like that. As you know, this court is very familiar with the standard that a district court may take in assessing the preliminary merits of a case. They're the same. It's the same merits, the same legal and factual issues underlying that grievance appeal. So I think it's reasonable in light of the statutory language to interpret them to be the same and that the final action would be the culmination of the board's adjudication of any particular. What's the board's standard for granting interim relief beyond the one year period? Once the board decides, Your Honor, that it will grant interim relief, my understanding, and it is not in the record, the board's adjudication of any additional extensions beyond the statutory period is that they would more or less be automatic. And that is once the board has decided that the one year period, maybe I'm under a misimpression. I thought the one year period was automatic. Right. So there's two stages, Your Honor. First is the temporary interim relief, and that's more or less an administrative stay. And the board would extend that as long as necessary to review the request for interim relief. And once the board has decided that interim relief is or is not warranted and the board may extend that relief for the quality to the case, the merits of the grievance appeal. What do you do with the statute? And it's forty one thirty six eight. It talks about the board may continue to grant the interim relief if it delays a final decision and then it gives the reasons. And my my understanding is that in reading those various reasons for justifications for the board or the standards, maybe that none of them deal with the merits of the case. They don't. This this statutory standard does not mention the merits of the case. You're correct, Your Honor. This presumes, however, that the board has already determined that such relief should be granted. So those are the additional concerns that the board must grapple in extending beyond. And that's what I was referring to earlier, Your Honor. And I apologize for any confusion. The interim relief is is time limited under the statute that the board may grant. And then the board extends that as a matter of equity, more or less, as it adjudicates the grievance to its logical conclusion. The district court dismissed on my right, remembering the district court dismissed on twelve, six. Correct, Your Honor. Do you think that this is probably six or do you think that this is jurisdictional? I think, Your Honor, this is appropriately a failure to state a claim under this court's jurisprudence regarding final agency action. The Trudeau case, I believe, whether or not agency action is final and reviewable. Do you think we have jurisdiction? It's just that there's no. Yes, sir. We have not challenged the court's jurisdiction to to review this this type of action. And that's because it comes up in a fundamentally different way than a preliminary injunction would, which Congress expressly provided this court with jurisdiction to review interlocutory orders. And, you know, the collateral order doctrine is, I think, a practical construction of the word finality to be viewed within the construct of twelve, six. I see my time is up, so there are no additional questions. We rely on the arguments presented in our brief and we ask the support to affirm the judgment below. Thank you. Mr. Lynch, we'll give you two minutes. Thanks, Your Honor. Foreign Service Act itself does not set a standard. The Foreign Service Grievance Board, however, does say if there is a more than a remote possibility of prevailing, which is less than a preponderance, which is far less than the mile win on the merits. Then interim relief can be granted. Ms. Biberman had three grievances. She prevailed on one, lost the second, and the third grievance, 2015-035, is before the Foreign Service Grievance Board right now for a final decision. Clearly, the denial or the denial of interim relief did not hold up or drive the interim decisions. They're separate from the grievance on the merits. So I think that's the crux of this matter right here. We can look down the race course just a slight bit, but that by no means is a judgment on the merits. On May 5th of 1973, it was a nice day in Louisville, Kentucky. Thirteen horses lined up for the Kentucky Derby. Secretariat was one of them. The race started. Secretariat was the very last horse out of the blocks. Every quarter mile in the ten furlong race, which is five quarters, that horse set a new pace outdistancing its previous time for the prior quarter. It passed the entire herd. It passed on the final stretch. It passed its closest competitor in one by two and a half lengths. I think that is standard. The interim decision does not drive the decision on the merits. Thank you. Thank you. Case is submitted.
judges: Rao, Walker, Randolph